**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**


**HANSEL D. GILES,**

      **Petitioner,**

**vs.**                               **CASE NO.  4:04cv83-WS/WCS**

**JAMES CROSBY,**

      **Respondent.**

_____/


## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by Hansel D. Giles pursuant to 28

U.S.C. § 2254.  Doc. 1 and 2 (memorandum).  Petitioner challenges his convictions

following nolo contendere pleas for:

> (1) Aggravated battery[1] and armed robbery with a firearm, case number
> R99-4103.  These offenses were committed on September 30, 1999.
> Doc. 11, Exhibit A, R. 6 (information); Exhibit B, p. 3, R. 104.
>
> (2) Three counts of armed robbery with a firearm, case number R99-4442.
> These offenses were committed on May 14, 1999.  *Id.*, R. 75 (information);
> Exhibit B, p. 4, R. 105.

---

[1] Petitioner was originally charged with attempted first degree murder, but
entered this plea to the lesser included offense.

(3) Two counts of armed robbery with a firearm, case number R99-4128.
These offenses were committed on October 9, 1998.  *Id.*, R. 45
(information); Exhibit B, p. 4, R. 105.

All of these convictions were in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida.  Petitioner was sentenced to six life sentences and 20 years as to the aggravated battery.  Doc. 11, Exhibit C, pp. 71-72.

Respondent filed an answer and exhibits.  Docs. 10 and 11.  Petitioner filed a traverse and a memorandum.  Docs. 12 and 15.

**Claims Presented**

Petitioner brings three claims of ineffective assistance of counsel with regard to his nolo contendere pleas.  He contends that his attorney was ineffective by failing to investigate the defense of voluntary intoxication, by failing to advise him that he had the a personal right to decide whether to testify, and by failing to properly advise that FLA. STAT. § 775.087, the "10-20-life" law, applied to only one of the cases.  Petitioner asserts that he would not have entered nolo contendere pleas had he had effective assistance of counsel.  Docs. 2 and 12.

**Procedural History**

Petitioner raised these claims in his Rule 3.850 motion and on appeal from denial of the motion.  Respondent concedes that state court remedies have been exhausted as to all claims and that the petition is timely.

**Section 2254 Standard of Review**

For claims which were properly exhausted and adjudicated in state court, this court's review is limited.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record."  Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146  L.Ed.2d 389 (2000) [2]; Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court  precedent.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

---

[2] This was Justice O'Connor's opinion for the Court in Part II; the rest of the opinion for the Court (Parts I, III, and IV) was by Justice Stevens.

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly

established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066,

2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520;

Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland,

Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or

omissions of counsel that are alleged not to have been the result of reasonable

professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim,

"counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."  466 U.S. at

690, 104 S.Ct. at 2066.  Petitioner has a heavy burden to establish the deficient

performance prong of Strickland, by showing that "no competent counsel would have

taken the action that his counsel did take."  Fugate v. Head, 261 F.3d 1206, 1217 (11th

Cir. 2001) (citation omitted).  There are no rigid requirements, or absolute duty to

investigate a particular line of defense.  Id.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always
> better.  Stacking defenses can hurt a case.  Good advocacy requires
> 'winnowing out' some arguments, witnesses, evidence, and so on, to
> stress others."

261 F.3d at 121 (citations omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.  To demonstrate prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Jackson v. United States, 976 F.2d 679, 681 (11th Cir. 1992), citing United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

If the state court identifies and applies the framework of Strickland in assessing an ineffective assistance claim, its adjudication does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he

must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).   "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner contends that his attorney was ineffective in the investigation of his defense of voluntary intoxication.  This claim appears to be directed to the last bank robbery on September 30, 1999, case number R99-4103.

The circuit court found that Petitioner had only alleged that he "informed counsel that he was intoxicated during the course of the crimes."  Doc. 11, Exhibit I, order denying Rule 3.850 motion, p. 2.  The trial court noted that Petitioner was charged with three separate bank robberies occurring over the course of almost a year.  *Id.*  The trial court found:

> The defendant does not claim he told counsel he had a history of alcohol or substance abuse; he fails to state with specificity how and when he allegedly became intoxicated prior to his committing the crimes; and, he fails to state how he was affected by the alleged intoxication.

*Id.*  The court concluded:  "The general claim that the defendant simply told counsel he was intoxicated when committing the crimes without alleging more facts concerning how and to what extent he became intoxicated and how it relates to the time of the offenses is insufficient to support a claim of ineffective assistance of counsel."  *Id.*

At the time Petitioner committed the three bank robberies, voluntary intoxication was a defense to a crime requiring a specific intent.[3]  Linehan v. State, 476 So. 2d 1262, 1264 (Fla. 1985).  There, the Florida Supreme Court said:

> We emphasize that voluntary intoxication is an affirmative defense and that the defendant must come forward with evidence of intoxication at the time of the offense sufficient to establish that he was *unable to form the intent necessary to commit the crime charged*.  We note that evidence of alcohol consumption prior to the commission of a crime does not, by itself, mandate the giving of jury instructions with regard to voluntary intoxication.  As this Court determined in *Jacobs v. State*, 396 So. 2d 1113 (Fla.), *cert. denied*, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981), where the evidence shows the use of intoxicants but does not show intoxication, the instruction is not required.

476 So. 2d at 1264 (emphasis added).

Petitioner was charged with attempted first degree murder in case number R99-4103, which is a specific intent crime.[4]  Doc. 11, Exhibit A, R. 6 (information).  He entered a nolo contendere plea, however, to aggravated battery.   Aggravated battery in

---

[3] The defense of voluntary intoxication was eliminated for offenses occurring after October 1, 1999.  FLA. STAT. § 775.051 (2000).  This was one day after Petitioner committed his last bank robbery.

[4] Florida Standard Jury Instruction 6.2 sets forth the following elements of attempted first degree murder in violation of FLA. STAT. §§ 782.04(1)(A) and 777.04, and these must be proven beyond a reasonable doubt:

> 1.  (Defendant) did some act *intended to cause the death* of (victim) that went beyond just thinking or talking about it.
>
> 2.  (Defendant) acted with a *premeditated* design to kill (victim).
>
> 3.  The act would have resulted in the death of (victim) except that someone prevented (defendant) from killing (victim) or [he] [she] failed to do so.

Florida Standard Jury Instruction 6.2 (emphasis added).

violation of FLA. STAT. § 784.045 is also a specific intent offense, and requires proof

beyond a reasonable doubt of the following elements:

> 1  (Defendant) [*intentionally* touched or struck (victim) against [his] [her] will].
>
> [*intentionally* caused bodily harm to (victim)].
>
> 2.  (Defendant) in committing the battery
>
>> a.  [intentionally or knowingly caused [great bodily harm to (victim)]].
>>
>> [permanent disability to (victim)]].
>>
>> [permanent disfigurement to (victim)]].
>>
>> b.  [used a deadly weapon].
>>
>> c.  [knew or should have known that (victim) was pregnant].

Florida Standard Jury Instruction 8.4 (emphasis added).

Florida Standard Jury Instruction 15.1 sets forth the following elements for

robbery in violation of FLA. STAT. § 812.13:

> 1.  (Defendant) took the (money or property described in charge) from the person or custody of (person alleged).
>
> 2.  Force, violence, assault, or putting in fear was used in the course of the taking.
>
> 3.  The property taken was of some value.
>
> 4.  The taking was with the *intent to permanently or temporarily [deprive (victim) of [his] [her] right to the property* or any benefit from it] [appropriate the property of (victim) to [his] [her] own use or to the use of any person not entitled to it].

Florida Standard Jury Instruction 15.1 (emphasis added).  Robbery, therefore, is a

specific intent crime.

Petitioner still has not alleged specifically how the ingestion of alcohol caused him to be unable to form the specific intent to commit armed robbery or aggravated battery.  The only support for the claim is testimony from the victim, and that testimony is relevant only to case R99-4103, the last bank robbery which occurred on September 30, 1999, at Capital City Bank on West Tennessee Street.  The victim testified at sentencing that she arrived at the bank at about 7:30 [a.m.] and as she exited her car, she heard the bushes rattling.  Doc. 11, Exhibit C, p. 8.  She was confronted by Petitioner, who pointed a gun at her and screamed "you're going to take me in the bank or I'll kill you.  I'll kill you now."  *Id.*, p. 9.  She told him she could not get in by herself, and Petitioner told her she had better find a way.  *Id.*  She unlocked the first door and stood against the wall, again telling Petitioner she needed someone else.  *Id.*  He fired a shot from his gun and told her he would kill her.  *Id.*  She tried to stall a bit more, but then opened the door into the bank.  *Id.*, p. 10.  Inside the bank, she found keys and opened the vault, but told Petitioner she needed more keys.  *Id.*  He said she had five seconds or she was dead.  *Id.*  He then shot her at close range.  *Id.*, p. 11.  The victim did not realize immediately that she had been shot due to the noise.  *Id.*  She then noticed her dress was wet.  *Id.*, p. 12.  She had been shot in the upper right part of her breast; the bullet went in one side of her breast and out the other.  *Id.*, p. 13.  There was no need to stitch the wound.  *Id.*, p. 18.  On cross examination, the victim agreed that Petitioner had a "heavy odor of alcohol" and seemed to be "pretty nervous, pretty agitated, jumpy."  *Id.*, p. 14.  The probable cause affidavit also states that Petitioner dragged the victim to the door and told her she was going with him.  Doc. 11, Exhibit B, R. 3.  He then changed his mind.  *Id.*

Petitioner has presented what appear to be excerpts of reports and transcripts of audiotape recordings from the victim in this case.  Doc. 2, Exhibits A-1 through A-8.  In a report of investigator Creamer, the victim said that Petitioner "wreaked of alcohol and appeared disheveled and hurried."  Exhibit A-1.  The victim reported that Petitioner had a very distinct smell of alcohol, and wore a fake mustache and a big floppy hat.  Exhibit A-2.  The rest of these exhibits are not related materially to Petitioner's claim of the defense of voluntary intoxication.

The probable cause affidavit for the September 30, 1999, crime also related that a week earlier, Petitioner's vehicle, an Infinity Q45, had been seen leaving the vicinity of another bank, Capital City Bank on West Pensacola Street, after police arrived to investigate the report of a suspicious person.  *Id.*  The person was described as lying in the bushes in front of the bank wearing a fake beard and mustache.  *Id.*

The victim in case number R99-4442 testified that she worked for Capital City Bank on May 14, 1999, as a teller.  Doc. 11, Exhibit C, p. 23.  Petitioner carried what looked like a little mini-machine gun.  *Id.*, p. 24.  Petitioner was wearing a false "beard/mustache."  Doc. 11, Exhibit B, probable cause affidavit, R. 72.  As he exited the bank, he shot twice and said "just to show you I'm not playing."  *Id.*

Case number R99-4128, involved the bank robbery on October 9, 1998, at the Capital City Bank on West Tennessee Street (the same bank as case number R99-4103).  The probable cause affidavit states that Petitioner wore a cap and a bandana over his face, and used a Daisy CO2 pellet pistol.  *Id.*  Doc. 11, Exhibit B, R. 43.

It is apparent from this evidence that all three bank robberies involved planning and premeditation.  The only robbery as to which there is any evidence of intoxication is

the last one, on September 30, 1999.  Petitioner had a heavy odor of alcohol, and this is

evidence of intoxication.  But Petitioner's actions were not so impaired as to lack the

specific intent to commit armed robbery or aggravated battery, particularly since

Petitioner's methods were consistent with the earlier bank robberies, offenses as to

which no intoxication is alleged.  He hid in the bushes, as he had done at another bank

a week before.  He wore fake facial hair and a hat.  He spoke clearly as to what he

wanted the victim to do.  When she stalled, he threatened to kill her, shot a warning

shot, and then shot her.  He demanded and took money.  The pattern that emerges is

that while the ingestion of alcohol may have reduced Petitioner's inhibitions, Petitioner

was acting with intent to implement his plan, to take money from the bank by force.  The

evidence showed a conscious intent to permanently deprive the victim of the bank's

money and to shoot her when she did not respond to Petitioner's demands.

In summary, Petitioner has shown neither attorney error nor prejudice to the

outcome with regard to this claim of ineffective assistance of counsel.  Thus, the state

court's denial of ground one has not "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Two**

Petitioner asserts that his trial attorney failed to inform him that had he gone to

trial, the decision whether to testify would be his alone to make.  The circuit court denied

this ineffective assistance claim in part for lack of any showing of prejudice to the

outcome.  Doc. 11, Exhibit I, order denying Rule 3.850 motion, p. 3.

"[A] criminal defendant has a *fundamental* constitutional right to testify in his or her own behalf at trial.  This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel."  United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (*en banc*, emphasis by the court).  During the plea colloquy, the trial court advised Petitioner that he had a right to a jury trial in all of these cases, and if the court accepted his pleas, then he was waiving the right to a jury trial, as well as, *inter alia*, "the right to either remain silent or testify in your own behalf . . . ."  Doc. 11, Exhibit B, p. 7 (R. 108).  Petitioner said that he understood.  *Id.*, p. 9 (R. 109).

Since there was no evidentiary hearing before the circuit court, there has been no factual determination as to whether Petitioner's trial attorney advised him that he alone could make the final decision as to whether to testify at trial.  But to prevail, Petitioner must also show that the outcome was prejudiced.  Nichols v. Butler, 953 F.2d 1550, 1553-1554 (11th Cir. 1992) (*en banc*).

Petitioner alleges that had he testified, he would have presented his "version of the events" as well as evidence in mitigation.  Doc. 2, unnumbered page 6; doc. 12, pp. 7-8.  He does not specify what this would have been.  As the circuit court held, this is insufficient to show ineffective assistance of counsel with respect to advice concerning the right to testify.  "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."  United States v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984) (citations omitted).  Apart from circumstances of such a magnitude that prejudice is presumed,

"there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." Cronic, 466 U.S. at 659, n. 26, 104 S.Ct. at 2047, n. 26, citing Strickland, 466 U.S. at 693-696, 104 S.Ct. at 2067-2069 (other citations omitted).  Thus, the state court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Three**

Petitioner claims that if his trial attorney had "simply told me that the sentencing and judgment scheme under the 10-20-life/s/ could only [affect] one case, I would not have taken a plea."  Doc. 12, p. 8.  He also contends that the record as to the one case, case number R99-4103, only showed "slight to moderate injury," and not "great bodily harm."  *Id.*

The trial court understood that this claim was directed only to Petitioner's nolo contendere plea in case number R99-4103.  Doc. 11, Exhibit I, order denying Rule 3.850 motion, p. 3.  The court rejected the claim, finding:

> All charges in this case [5] were subject to the 10-20-life statute due to the use of and the firing of a gun during the commission of the crimes.  The sentences imposed by the court followed a sentencing hearing wherein the victim testified as to the crime and her injuries.  The sentences were then affirmed on direct appeal.  Accordingly, the defendant fails to show any unreasonable, ineffective acts by counsel.

*Id.*, pp. 3-4.

---

[5] This presumably refers only to aggravated battery and armed robbery in case number R99-4103.

The trial court seems to be saying that it could not identify any error in the sentencing in case number R99-4103, and therefore there could not have been attorney error as alleged.  It appears to this court, however, that the allegation is not that case number R99-4103 was *not* governed by the 10-20-life sentencing law, but that it was the *only* case of the three subject to that law, and that Petitioner's lawyer did not explain this distinction to him.  It is Petitioner's contention that had he been so advised, he would not have entered a nolo contendere plea to all of the charges.

That said, the claim is without merit.  The trial court found the injury to the victim to be moderate rather than severe.  Doc. 11, Exhibit C, p. 56.  Whatever the outcome in sentencing in the other two cases, Petitioner faced a mandatory life sentence for his role in case number R99-4103 based entirely on his nolo contendere plea, and the plea colloquy reveals that he knew this fact.  At the plea colloquy, the court advised Petitioner that he faced a maximum sentence of life imprisonment for each of the three bank robberies, and he said he understood.  Doc. 11, Exhibit B, pp. 8-9 (R. 109-110).  The prosecutor pointed out that if the 10-20-life law applied to Petitioner (without specifying as to which case), he would get a mandatory sentence of life imprisonment, and Petitioner said he understood.  *Id.*, p. 9 (R. 110).  Thus, Petitioner received accurate advice as to the applicability of the 10-20-life law to this last case, and this last robbery was the most important of the three.  The attempted first degree murder charge was the most serious charge facing Petitioner, not only because a victim had been

injured, but because it occurred during the third bank robbery in a year and was a part of escalating violent criminal conduct.[6]

At sentencing, Petitioner's lawyer pointed out that the 10-20-life law only applied to one of the cases because the law took effect on July 1, 1999.  Doc. 11, Exhibit C, p. 62.  He said it applied to case number R99-4103, the offenses committed on September 30, 1999.  *Id.*

Petitioner's strategy was to take an appeal challenging the constitutionality of the 10-20-life law to his case or cases.[7]  At the plea colloquy, Petitioner's counsel said that Petitioner would plead nolo contendere to case number R99-4103, reserved the right to contest the constitutionality and applicability of the 10-20-life law, and understood that the State would "seek to have the Court find [that the 10-20–life law] applies in 99-4103."  Doc. 11, Exhibit B, pp. 3-4 (R. 104-105)  Counsel said he would plead nolo contendere to cases numbered R99-4128 and R99-4442, and reserved the right to contest the constitutionality and applicability of the 10-20-life law.  *Id.*, pp. 4-5 (R. 105-106).

Additionally, the strategy of Petitioner's attorney is outlined in a letter he sent to Petitioner on April 6, 2000.  Doc. 2, Exhibit A-9.  There counsel advised Petitioner that the victim of the bank robbery on September 30, 1999, who had been shot, would be a very damaging witness, and independent evidence linked Petitioner to the crime.  His attorney said that the prosecutor was "not inclined to offer any plea and will seek a

---

[6] Petitioner fired the handgun in the second robbery, case number R99-4442, but did not hit anyone.

[7] That was Petitioner's first issue on direct appeal.  Doc. 11, Exhibit E.

sentence of life imprisonment if he is able to obtain a conviction." *Id.* Counsel advised Petitioner to enter a plea and try for a sentence of 25 years. *Id.* He said that since the gun was used to injure a person in the last robbery, *that* case would be governed by the 10-20-life law and the range of punishment was 25 years to life. *Id.*

In summary, Petitioner has not shown attorney error. Petitioner was correctly advised by his lawyer as to the jeopardy he faced for the armed robbery with injury in case number R99-4103. The strategy of entering a plea and trying to get a sentence less than life was reasonable, given the evidence of guilt as to that offense as well as to the others.

Nor has Petitioner shown prejudice to the outcome. Since Petitioner has not shown that his attorney's advice was erroneous, he cannot show that erroneous advice caused him to enter a plea.

It is therefore **RECOMMENDED** that the court **DENY WITH PREJUDICE** the petition for writ of habeas corpus filed by Hansel D. Giles pursuant to 28 U.S.C. § 2254, challenging his convictions in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, for (1) aggravated battery and armed robbery with a firearm, case number R99-4103, (2) three counts of armed robbery with a firearm, case number R99-4442, and (3) aggravated battery and armed robbery with a firearm, case number R99-4128.

**IN CHAMBERS** at Tallahassee, Florida, on March 28, 2005.


s/     William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.